Richard H. SHAFER and Mary Ann Shafer, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. 5860.

United States District Court
S. D. Ohio, E. D.
Jan. 24, 1962.

474

Archer E. Reilly, Jr., Columbus, Ohio, for plaintiffs.

Lewis F. Oberdorfer, Asst. Atty. Gen., and Lee A. Jackson, Atty., Tax Division, Dept. of Justice; Joseph P. Kinneary, U. S. Atty., S.D.Ohio, Columbus, Ohio, for defendant.

WEINMAN, Chief Judge.

1. This Court has jurisdiction of this section under the provisions of Section 1346(a) (1), Title 28 United States Code.

2. The plaintiffs were, and are now, citizens of the State of Ohio, residing at 6720 Lee Road, Westerville, Ohio, in the County of Franklin, Ohio.

3. (a) Prior to the year 1941, plaintiffs purchased 6% Oriental Development Company Ltd. bonds due March 15, 1953, in the face amount of $44,000.00, and 6½% Imperial Japanese Government External Loan Bonds due February 1, 1954 in the face amount of $16,000.00. Both such bonds had semi-annual interest coupons attached.

(b) Due to the state of war existing between the United States of America and the Japanese Government, service on these bonds was suspended on December 8, 1941. On December 11, 1941, the Securities and Exchange Commission advised stock and bond exchanges and deal-ers throughout the United States to cease handling all transactions in Japanese bonds, which included those set out above held by the plaintiffs.

(c) By release No. 4518, dated November 11, 1950, the Securities and Exchange Commission removed the restrictions on trading Japanese bonds. On December 22, 1952, the Japanese Government resumed service on the bonds to those holders who accepted a proposed settlement whereby the maturity date of the bonds and the payment date of each interest coupon bearing an original payment date prior to September 26, 1952, was extended for a period of ten years from the original payment date, except that interest due prior to December 1942 was payable on December 22, 1952. The plaintiffs agreed to this settlement proposal with respect to these bonds.

(d) The New York Stock Exchange then ruled that blocks of coupons (originally consisting of 20 coupons for the period of 1942 to 1952, but under the terms of the offer, due from 1952 to 1962) could be detached from the bonds and sold in transactions apart from the purchase and sale of the bonds themselves.

4. In the year 1954, plaintiff sold coupons on these bonds bearing thereon restamped due dates subsequent to 1954 through Bache & Co., a member of the New York Stock Exchange, in the open market to unknown purchasers, receiving therefor $18,336.00. In addition, plaintiffs received interest of $8,677.44 on the current (due in 1954) coupons on these bonds.

5. On their timely filed joint 1954 federal income tax return, plaintiffs reported as long term capital gain an amount of $18,336.00 for "Coupons past due Gov't bonds" and reported ordinary interest income in the amount of $8,-157.44 for "Oriental and Japanese Bonds-Current", and in the further amount of $520.00 for "Bache & Co.—Interest Japanese Bonds."

6. This 1954 return was audited by agents of the Commissioner of Internal Revenue, and a deficiency in tax was de-

termined based upon the Commissioner's determination that the amount of $18,-336.00 received from Bache & Co. for the sale of the block of post 1954 coupons (referred to in paragraph 4, page 3) was ordinary income rather than long-term capital gain as reported, as well as certain other adjustments to income not here in issue. The deficiency so determined in the amount of $14,126.50, plus interest of $2,999.07, or a total of $17,-125.57, was timely assessed, and satisfied by plaintiffs by payment in the amount of $14,126.50 on October 29, 1958, and $2,999.07 on November 18, 1958.

7. On September 2, 1959, plaintiffs timely filed a claim for refund in the amount of $12,101.76, on the ground that the amount of $18,336.00 received for the sale of the block of post 1954 coupons, as set out above, qualified for long-term capital gain treatment. By registered notice dated April 26, 1960, the Commissioner rejected this claim, and this suit for refund was timely commenced.

The issue before this Court as presented by the plaintiffs is: Did the original interest coupons attached to the Japanese war bonds become converted to capital assets during the war period in which they were valueless and non-negotiable so that when they were traded in for new overstamped coupons in 1952, the transaction constituted a sale or exchange of capital assets under Section 112 of the Internal Revenue Code of 1939, 26 U.S.C.A. § 112?

The stipulation of facts is not clear as to whether or not plaintiffs received new overstamped coupons in 1952. Reference is made however to a paragraph in the Commissioner's Report. Rev.Rul. 54, 53 CB–1 (1953).

"For the extended periods after original maturity dates, the bonds shall bear interest at the same rate and with the same semi-annual payment dates of each extended year as specified in the original contracts and/or indentures. The Japanese Government will endeavor to arrange that, about 1 month prior to the first semi-annual interest payment date in the first such extended year, or as soon as possible in the case of bonds already matured, new coupon sheets corresponding to such extended periods shall be attached to the respective bonds. In cases where new coupon sheets are not ready by the date of actual payment, scrip or other certificates may be delivered so as to serve the purpose of the interest payment."

The Court does not believe that the issuance of new coupons or the overstamping of old coupons is a factual question which can change the question of law herein presented.

The question to be primarily determined by the Court is as follows: Do the proceeds from the sale of the coupons qualify as long term capital gain or were said proceeds properly taxed by the Commissioner as ordinary income?

### DISCUSSION

This being a case of first impression with the Courts, we first note the arguments advanced by plaintiffs. In summary, plaintiffs set forth—(1) that they did not have any use or benefit from the coupons due to circumstances entirely beyond their control during the Japanese War Period; (2) that they could not legally collect on the coupons due to the Trading With The Enemy Act; and (3) that they acted in good faith at every stage of the transaction.

Ordinary income cannot be converted into capital gain by such reasoning. One cannot change the status of interest bearing coupons because of the lack of use or benefit thereof or uncollectibility for a period of time or because of good faith. A capital gain can only result from a sale or exchange of a capital asset. The advice of the Securities and Exchange Commission suspending service on these bonds on December 8, 1951, was a restriction on trading with a result that there was no market for the bonds in the United States and, therefore, no quotation on the bonds.

All individuals owning securities of a foreign country who purchase and re-

tain bonds of said foreign country do so with full knowledge that there will be no market, no quotations and no value for said securities during the period of time that the United States is at war with said country. It follows, too, that said securities during said period of time would be uncollectible. Such a risk is self evident and plaintiffs cannot thus complain and present the argument of good faith because of the restrictions imposed as a result of war.

Plaintiffs claim that equity merits consideration under such circumstances. The Court believes that the plaintiffs must rely solely upon the transaction imposed by the Japanese Government wherein service on the bonds was resumed to those holders who accepted a proposed settlement whereby the maturity date of the bonds and the payment date of each interest coupon bearing an original payment date prior to September 26, 1952, was extended for a period of ten (10) years from the original payment date. The interest coupons in question represented rights to interest income which they had purchased in that form. This is not a situation wherein the plaintiffs made their original investment in detached interest coupons.

The New York Stock Exchange ruling that blocks of coupons (for the period of 1942 to 1952) could be detached from the bonds and sold in transactions apart from the purchase and sale of these bonds themselves was for the benefit of bond holders who wished to realize their interest money without further extension of payment dates at a price which provided for the realization of accelerated income. Such sale was voluntary and did not change the character of the transaction. Plaintiffs did not receive new securities and the only act was the overstamping with new date for payment the existing bonds and coupons, or the substitution of new coupons. It was not necessary for plaintiffs to accept the proposed settlement which extended the payment date of each interest coupon and the maturity date of the bonds. The offer of settlement did not affect the existing rights of holders of bonds or coupons who did not accept the offer. Therefore, nonacceptance of the proposed settlement did not invalidate the securities.

■ Was there a sale? No. Was there an exchange of a capital asset? No. Was there an extension of time for payment? Yes. The sole effect of the offer of settlement of the Japanese Government was a ten year extension of the maturity or due dates of the bonds or coupons and the terms of the obligation were not otherwise altered. It is settled that an agreement extending the maturity dates or notes does not produce a sale or exchange upon whch gain or loss must be recognized. See Motor Products Corp. v. Commissioner, 47 B.T.A. 983 (First Issue), affirmed per curiam on the opinion, 142 F.2d 449 (C.A. 6th).

The Court agrees with the ruling of the Commissioner after considering the same facts (Rev.Rul. 54, 1953–1 Cum. Bull. 204) holding that acceptance of the offer of settlement and presentment of the bonds to the Japanese Government for the purpose of overprinting the extended maturity date thereon, pursuant to the offer of settlement does not constitute an exchange of property which results in gain or loss recognizable under Section 112 of the Code.

### JUDGMENT

It is therefore concluded that the proceeds from the sale of the coupons do not qualify as long term capital gain and were properly taxed by the Commissioner as ordinary income. Judgment is therefore granted in favor of defendant, United States of America, and against plaintiffs, and the complaint filed by plaintiffs is hereby dismissed.

No special entry necessary.